UNITED STATES

v.

Private (E–1) Jeffrey L. WECKNER, 567–11–4048, US Army, Company A, 1st Battalion, 87th Infantry, 8th Infantry Division, APO New York 09034.

SPCM 11997.

U. S. Army Court of Military Review.

18 Feb. 1977.

Appellate Counsel for the Accused: CPT Michael P. La Haye, JAGC; CPT Lawrence E. Wzorek, JAGC; MAJ Joe D. Miller, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Richard A. Kirby, JAGC; MAJ Michael B. Kennett, JAGC; COL Thomas H. Davis, JAGC.

Before COOK, DRIBBEN and DeFORD, JJ.

## OPINION OF THE COURT

DeFORD, Judge:

The appellant, Private Jeffrey L. Weckner, U.S. Army, hereinafter referred to as the accused, was charged, tried, and convicted by a military judge sitting as a special court-martial for the offenses of failure to obey a lawful order, disrespect to a noncommissioned officer, and possession of heroin in violation of Articles 91, 92 and 134, Uniform Code of Military Justice (UCMJ) (10 U.S.C. §§ 891, 892 and 934). The accused received the approved sentence set forth above and from that judgment and sentence, an appeal pursuant to Article 66, UCMJ was perfected to this Court.

The accused alleges that prejudicial error was committed during his trial in that the military judge erred by admitting into evidence Prosecution Exhibit 2 (.09 grams of heroin) which was improperly obtained by the Government as a result of the exploitation of an illegal apprehension. We do not agree that prejudicial error was committed herein and affirm.

The Court finds that the following operative facts are dispositive of this issue.

On 29 November 1975 at an Army barracks in the Federal Republic of Germany, a Sergeant Williams, an occupant of that barracks who was then off duty was checking with other occupants of the barracks in an effort to find someone who would be willing to exchange U.S. dollars for German marks. Sergeant Williams approached one of the rooms and knocked on the closed door

and attempted to enter. The door was locked and the Sergeant started to depart. As he walked away, the door to the room was unlocked by one of the occupants and partially opened. Sergeant Williams then entered the room for the purpose of inquiry concerning the exchange of currency and to ascertain why the door had been locked in violation of a company policy which prohibited such practices. The room was assigned to a Specialist Williams, who had unlocked and opened the door, and a soldier named Green. In addition, the accused had previously entered the room without objection of the assigned occupants and was present therein.

Upon entry, Sergeant Williams noted that Specialist Williams touched the accused for the purpose of drawing his attention to Sergeant Williams' presence. Further, Sergeant Williams saw the accused sitting at a table folding up a piece of cellophane which contained white paper which the accused quickly completed folding into a packet and placed in his pocket. Sergeant Williams had previously been involved in the alcohol and drug abuse program and as a result of these surreptitious movements suspected that the accused might be involved in illegal activity. He then told the accused to come with him (Sergeant Williams) downstairs. He also told the accused that he suspected him of harboring drugs. The accused first refused to accompany Sergeant Williams at which point the Sergeant read the accused his rights under Article 31, UCMJ, using a standard Government issue rights-warning card. The accused then started to follow Sergeant Williams but reversed his track and went to the window, opened it and removed a bottle of water. As he took a drink of the water, he reached into his pocket, withdrew a cellophane package and dropped it out of the window. He then

followed Sergeant Williams out into the hall, but then again refused to follow the Sergeant and went into another room in the barracks. After a threat to call for military police assistance, the accused followed Sergeant Williams to the charge of quarters office on the first floor. (This room was directly beneath the room from which the accused had dropped the cellophane package.) Sergeant Williams advised the charge of quarters, a Sergeant Roach, of the events involving the accused. Roach opened the window and retrieved a cellophane package which included 24 individual packets which all told contained .09 grams of heroin.

The accused's allegation of error is grounded upon a citizens right to privacy under the Fourth Amendment to the Constitution of the United States.

■ It has long been established that the Fourth Amendment[1] prohibits unreasonable searches and seizures and applies in the military as well as in the civilian community.[2]

■ The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion.[3]

■ The test to be used in determining the capacity to claim the protection of the Fourth Amendment is whether or not the particular locale is one in which there was a reasonable expectation of freedom from Governmental intrusion.[4]

Here, the accused was physically present with the lawful occupants of the room. There is no indication that the assigned occupants had any objection to his presence in the room. We assume his presence was lawful and he therefore has standing to invoke the protection of the Fourth Amend-

1. United States Constitution, Amendment IV.

2. *United States v. Unrue,* 22 U.S.C.M.A. 466, 47 C.M.R. 556 (1973).

3. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

4. *Mancusi v. DeForte,* 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968). *See also Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

ment.[5] If Sergeant Williams' entry into the room was an unlawful intrusion therein, anything he saw in the way of illegal conduct can be subjected to the exclusionary rule.[6]

Here, Sergeant Williams first knocked on the door of Specialist Williams and Private Green's room. The door was locked and he walked away. As he proceeded away, he heard the door being unlocked. Private Green testified that Specialist Williams unlocked and opened the door and Sergeant Williams entered the room. Sergeant Williams testified that he heard the door being unlatched and he returned to the door and pushed on the handle. We believe that under the circumstances of this case that the door to the room was opened to Sergeant Williams in response to his knock. As he had an official purpose to inquire about, his entry into the room was lawful.[7]

Sergeant Williams having lawfully arrived upon the premises then observed what appeared to him to be suspicious behavior on the part of the accused. We do not believe he arrested the accused nor did he then search the accused's person. He did, however, determine to investigate further and directed the appellant to accompany him to see the unit charge of quarters.[8]

The accused's voluntary act of attempting to rid his person of the packets of heroin resulted in abandonment of those illegal substances which then became *bona vacantia.*[9] Their subsequent admission into

evidence over the objection of the trial defense counsel was proper and in accordance with the law. Accordingly, the military judge did not commit error in the admission of heroin as evidence at the trial.

The remaining assignments of error have been considered and are deemed to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge COOK and Judge DRIBBEN concur.

## UNITED STATES

---

5. *See* paragraph 152, Manual for Courts-Martial, United States, 1969 (Revised edition); *Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *United States v. Dingwell,* 51 C.M.R. 99, 1 M.J. 594 (1975).

6. *See Nardone v. United States,* 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); *United States v. Bearchild,* 17 U.S.C.M.A. 598, 38 C.M.R. 396 (1968).

7. We note that soldiers living together in a communal situation do not observe the amenities of awaiting specific invitations to enter another soldier's living quarters. *See also United States v. Frazier,* 49 C.M.R. 713 (1975) a case similar to the situation before us.

8. Officers and non-commissioned officers of the Army have a responsibility to cause the investigation of matters which they believe may be offenses under the Uniform Code of Military Justice whether on duty or not. Their responsibility in the prevention of criminal acts is similar to that of a police officer. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Summers,* 13 U.S. C.M.A. 573, 33 C.M.R. 105 (1963).

9. *See Abel v. United States,* 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). *See also United States v. Martin,* 386 F.2d 213 (3th Cir. 1967).