UNITED STATES, Appellee,

v.

Private First Class Philip S. BAILEY, SSN 024–44–3271, United States Army, Appellant.

CM 434834.

U. S. Army Court of Military Review.

29 June 1977.

Lieutenant Colonel John R. Thornock, JAGC, Captain Ralph E. Sharpe, JAGC, and Captain Johnny D. Mixon, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel John T. Sherwood, Jr, JAGC, Captain Gary F. Thorne, JAGC, and Captain Laurence M. Huffman, JAGC, were on the pleadings for appellee.

Before COOK, DRIBBEN and DeFORD, Appellate Military Judges.

## OPINION OF THE COURT

COOK, Senior Judge:

Appellant was charged under Article 134, Uniform Code of Military Justice (10 U.S.C. § 934) with one specification alleging the wrongful possession, one specification combining an allegation of wrongful transfer and sale, and one specification alleging the wrongful introduction onto a military post, of marijuana. In spite of his pleas he was convicted of all three criminal acts at a bench trial, general court-martial.

As the trial was conducted on 25 March 1976, we are not concerned in this case with the sentencing problem addressed in *United States v. Courtney*, 1 M.J. 438 (1976); *United States v. Jackson*, 3 M.J. 101 (CMA 1977).

Appellant does, however, raise other issues deserving of our attention.

## I

Appellant's principal assertion of error is that the search which uncovered the cache of marijuana (which is the subject of the charges against him) was an illegal one. Two military police investigators, after having received a report from an informant that appellant was in possession of a sizeable quantity of marijuana, proceeded expeditiously to the barracks in which appellant was billeted. While they tried to reach the unit commander to obtain authorization to conduct a search, they did not succeed in making contact with him prior to completion of the challenged search. On arrival they found the building secured from the inside, but within minutes the barracks' sergeant arrived and admitted the investigators. Appellant, along with others, was, at that time, present in an area of the barracks devoted to a lounge. After fruitless searches elsewhere in the building and adjacent environs, to include consensual searches of appellant's room and car, they found what they were seeking hidden in a bucket located under a sink in the first floor latrine.

Appellant's contention here, as at trial, is that the fruits of the search are inadmissible because they were obtained by an illegal search. Counsel for the Government counters by arguing that appellant is without standing to complain as this search was conducted in an area, *i. e.*, the latrine, where he had no reasonable expectation of privacy.

█ The development of the reasonable expectation of privacy concept, adopted [1] by Judge Duncan in his opinion (not shared by his two brethren) in *United States v. Simmons*, 22 U.S.C.M.A. 288, 46 C.M.R. 288 (1973), has been a murky one in the military. Although the United States Court of Military Appeals has alluded to the concept

---

1. From the United States Supreme Court opinion in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

from time to time[2] that Court has never decided a case in which the majority has made it the fulcrum of its opinion. There has also been a paucity of reported opinions from this Court involving that theory.[3] Because it involves the crucial question of appellant's standing to complain in the oft litigated area of search and seizure one would expect to encounter numerous opinions within the military judicial system discussing the concept. In spite of the scant treatment it has received, it seems clear that "expectation of privacy" is a notion that is firmly imbedded in military jurisprudence.[4]

Because it is a question which concerns standing, it is a threshold matter which must be resolved before any of the other issues involved in a challenge to a search are entertained.

As Judge Cook said in *United States v. Thomas*, 1 M.J. at 400:

" . . . Not until the agents actually intruded into property as to which the accused possessed a reasonable expectation of privacy could there be any question as to their authority or as to the legal consequences of what they did. . . ."

In the leading opinion in the military, *United States v. Simmons, supra* at 292–93, 46 C.M.R. at 292–93, Judge Duncan provided the following guidance to aid in defining reasonable expectation of privacy:

" . . . In other words the crucial issue, therefore, is whether, in light of all the circumstances, [the place searched] was a place where freedom from governmental intrusion should have been reasonably expected.

" . . . Clearly, then, a critical determination in assessing a soldier's expectation of privacy as constitutionally protected is the extent to which the Government, either expressly or by reasonable implication, has retained the right to enter its property. . . ."

The relevant facts pertinent to a decision concerning the competing interests in this matter are these:

The barracks in which appellant resided was used primarily as a Medical Holding Detachment transient billet. Patients who had completed their residence in the hospital were lodged in this barracks while awaiting either reassignment or separation. The building was a two-story structure. While the upstairs was an open bay arrangement with some toilet facilities, the downstairs was configured differently. On entering the front door the downstairs latrine was immediately on the right. The area to the left had an aisle which ran between two rooms, one to the left and one to the right of the aisle. Appellant occupied the room on the right-hand side of the aisle. This aisle terminated where it opened up into a lounge or dayroom. The end of the building furthest from the latrine end was utilized as an orderly room. The orderly room had its own separate entrance which was located on the outside of the far end of the building, but there was a connecting door to the dayroom which was unlocked during working hours and secured at other times. The door to the quarters portion of the barracks was usually secured from the inside with ingress normally provided by an occupant. Presumably this effectively limited entrance to the barracks to occupants and their guests. The latrine in question was used primarily by the appel-

**2.** *See* the trifurcated decision in *United States v. Roberts*, 2 M.J. 31 (1976); *United States v. Thomas*, 1 M.J. 397 (1976); and the bifurcated decision in *United States v. Miller*, 1 M.J. 367 (1976). The lead opinion in the latter case "adopt[ed] the development and analysis" of Senior Judge Jones in *United States v. Miller*, 50 C.M.R. 303 (A.C.M.R.1975).

**3.** *See United States v. Miller*, 50 C.M.R. 303, (A.C.M.R.1975); *United States v. McClelland*,

49 C.M.R. 557 (A.C.M.R.1974); and *United States v. Weckner*, 3 M.J. 546 (A.C.M.R. 18 Feb. 1977).

**4.** *See* Gilligan, *Expectation of Privacy: A Two-Edged Sword as to Standing*, The Army Lawyer (Sep 1973), for an early treatment of the subject.

lant and the occupant of the other first floor room. Appellant stored a piece of plywood and some insulation in this latrine. On occasion he left his shaving gear on a shelf in this latrine. And, once in a while, he would leave his wash in one of the machines also located in this latrine. He stated that he wasn't fearful that the items he left unattended in the latrine would be stolen.

In contrast to this picture of relatively undisturbed dominion by the appellant over this latrine, the record reveals the following facts. The doorway to the latrine was not secured in any manner. The upstairs occupants and their guests were also free to use the toilet facilities located in this latrine although they entered it primarily to use the washer and dryer that was available there. During the workday, personnel from the orderly room had unrestricted access to this latrine. In addition to the washer and dryer the government stored a mop, broom and a mop bucket in this room. Appellant conceded on examination that he had never been informed that he had any unique proprietary interest in or control over this latrine.

Admittedly, the barracks in question was not as freely accessible as those located at the Army's large training centers. Nevertheless, it did not bear the mark of relative exclusiveness borne by permanent party quarters. The Government assigned individuals who were in a transient category to temporary billets in this building. While, due to the presence of another toilet on the second floor, the latrine on the first floor actually received limited use, the Army never indicated in any way that appellant was privileged to preclude anyone from using that latrine, and as a matter of fact personnel from the orderly room (non-residents of the building) were permitted to use that latrine during office hours.

■ On balance we find from these facts that the Government did not divest itself to any legally perceptible degree of its right to enter this latrine. Or, stated another way, we hold that based on this record the appellant had no reasonable expectation of freedom from Government intrusion upon the premises of this latrine.

Absent such an expectation of privacy in the premises appellant is stripped of any standing to complain of the warrantless search conducted by the Government's agents thereon.[5]

## II

After the agents discovered the appellant's bundle of marijuana in a bucket in the latrine, they obtained a statement from him which was subsequently entered at trial. In this statement the appellant admitted to receiving the marijuana in question in the mail about a week before and to having some some of it prior to its discovery. Appellant complains that as these revelations in his confession constitute the sole evidence in the record relevant to the "transfer and sale" and the "introduction onto a military post" charges the findings must be disapproved as to those charges for lack of corroborative evidence.

Paragraph 140a (5), Manual for Courts-Martial, United States, 1969 (Revised edition) provides relevantly that:

" . . . It is a general rule that a confession or admission of the accused cannot be considered as evidence against him on the question of guilt or innocence unless independent evidence, either direct or circumstantial, has been introduced which corroborates the essential facts admitted sufficiently to justify an inference of their truth. . . If the independent evidence raises an inference of the truth of some, but not all, of the essential facts admitted, then the confession or admission may be considered as evidence against the accused only with respect to those essential facts stated in the confession or admission which are so corrobo-

---

5. On the other hand, had appellant been clothed with standing, there is no question that this evidence would be inadmissible under the terms of the third full paragraph of paragraph 152, Manual for Courts-Martial, United States, 1969 (Revised edition).

rated by the independent evidence. . . .." [6]

■ For the reasons expressed by Judge Finkelstein in *United States v. Holler*, 43 C.M.R. 461 (A.C.M.R.1970), we hold that appellant's admission to introducing the marijuana onto the post was sufficiently corroborated by the evidence of his possession. However, we are constrained to agree with appellant that there is a total void of independent evidence to corroborate appellant's admissions of transfer and sale.

The finding of guilty of Specification 2 of the Charge is set aside and that specification is dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the above-indicated error and the entire record, the Court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement at hard labor for one year, total forfeitures, and reduction to the grade of Private E–1.

Judge DRIBBEN and Judge DeFORD concur.

---

**6.** This is a considerably less stringent standard than that contained in the preceding Manual. *United States v. Seigle*, 22 U.S.C.M.A. 403, 47 C.M.R. 340 (1973); *United States v. Hise*, 20 U.S.C.M.A. 3, 42 C.M.R. 195 (1970).