UNITED STATES, Appellee,

v.

George D. BARUNAS, Lieutenant, U.S. Navy, Appellant.

No. 48610.
NMCM 83 3278.

U.S. Court of Military Appeals.

Nov. 10, 1986.

For Appellant: *Herbert N. Harmon, Esq.* (argued); *Lieutenant Colonel M.W. Lucas,* USMC.

For Appellee: *Lieutenant Colonel L.F. Henley,* USMC (argued); *Captain Carl H. Horst,* JAGC, USN and *Lieutenant David O. Vollenweider, III,* JAGC, USNR (on brief); *Captain W.J. Hughes,* JAGC, USN and *Lieutenant Commander R. Clayton Seaman, Jr.,* JAGC, USN.

*Opinion of the Court*

SULLIVAN, Judge:

Appellant was tried by a general court-martial before a military judge alone during April and May, 1983. Contrary to his pleas, he was found guilty of the use and possession of cocaine in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced to a reprimand and dismissal from the service. The convening authority approved the sentence, and the Court of Military Review affirmed.

This Court remanded the record of trial to the court below. 18 M.J. 138–39 (1984). The court below then dismissed the offense of possession of cocaine, on the basis of *United States v. Bullington.* 18 M.J. 164 (C.M.A.1984), but affirmed the remaining findings of guilty and the sentence.

This Court granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS PROSECUTION EXHIBIT 7 AS A STATEMENT MADE IN THE COURSE OF PLEA DISCUSSIONS.

We hold that appellant's letter to his commanding officer was admitted against him at this court-martial in violation of Mil.R. Evid. 410, Manual for Courts-Martial, United States, 1969 (Revised edition). We also find this error was prejudicial within the meaning of Article 59(a), UCMJ, 10 U.S.C. § 859(a), so as to require a rehearing.

At trial the parties stipulated to the following relevant facts:

> Solely for purposes of the defense Motion to Suppress the written statement made by LT BARUNAS on 8 February 1983, it is hereby stipulated by and between the defense and the prosecution, with the express consent of the accused, that:
>
> On 18 January 1983, the USS BLUE-BACK (SS 581) conducted a random urinalysis testing pursuant to authorization by COMSUBPAC. LT BARUNAS was one of the individuals required to give a urine specimen. Subsequent laboratory analysis at Naval Regional Medical Center, Oakland, California, indicated the presence of cocaine metabolites in the urine specimen identified as belonging to LT BARUNAS. This information was conveyed to the USS BLUEBACK by message on 25 January. A subsequent administrative and technical review was carried out and the same result was conveyed to the command by message on 1 February.

On that same day, 1 February, charges of use and possession of cocaine were preferred against LT BARUNAS, and a request for an Article 32 [UCMJ, 10 U.S.C. § 832] Investigation Team was sent to the Officer in Charge, Naval Legal Service Office Detachment, Bremerton. On 2 February LT BARUNAS first met with his detailed defense counsel. The case was formally referred to an Article 32 Investigation on 7 February. The Investigating Officer, LT Maynard C. BOWER, Jr., JAGC, USN, set 9 February as the date for the hearing.

On 8 February, the day before the investigation, LT BARUNAS, after consultation with counsel, submitted a letter to his commanding officer. In it, LT BARUNAS set forth the facts in his case, explained the ruinous affect [sic] that general court-martial proceedings would have on his life, and begged his commanding officer to consider "any other avenues of punishment short of court-martial," including the resignation of his commission.

In the late morning of 8 February, defense counsel telephoned LCDR PALECK, Executive Officer of the BLUE-BACK, and inquired as to whether the letter had been received. Defense counsel explained that LT BARUNAS desired to avoid court-martial and suggested alternatives to court-martial, including non-judicial and administrative procedures. LCDR PALECK said he would take the letter to the command. In the late afternoon of 8 February or the morning of 9 February, LCDR PALECK telephoned defense counsel and informed him that the Commanding Officer had decided to go forward with the Article 32 Investigation. The investigation was conducted on the morning of 9 February.

Prosecution exhibit 7, the subject of appellant's suppression motion and this appeal, reads as follows:

8 February 1983

From: Lieutenant George D. BARU-NAS, U. S. Naval Reserve

To: Commanding Officer, USS BLUE-BACK (SS 81)

Via: Executive Officer, USS BLUE-BACK (SS 81)

Subj: Statement in the case of Lieutenant George D. BARUNAS, U. S. Naval Reserve

1. On Monday, 10 January 1983, I knowingly abused a controlled substance (cocaine). I had unexpectedly received a letter the same day from a close college friend (non-military) containing a small amount of cocaine. I was curious about the substance from all the media publicity it has received. After much debate and several beers, I decided I wouldn't be taking too great a risk to try it once. I did so alone and in the confines of my own apartment. It was my only instance of drug abuse since joining the naval service.

2. I deeply regret what I have done. Additionally, I regret not being truthful with you before this. I was overwhelmed by all the trust and confidence you had in my innocence. I have had an extremely difficult time facing myself. I have lost everything which matters to me. I love the Navy and had every intention of making it a career. I have let down the crew, the wardroom and most of all my family. I haven't been able to sleep because of the tremendous amount of guilt and remorse I've been experiencing. I still haven't been able to tell my parents about the situation. They are so proud of me for following in my father's footsteps that it would kill them to find out. My grandmother keeps a picture of me in uniform in her living room and brags about me to all her friends. I haven't even been able to go out in town for fear of having to face BLUEBACK crewmembers. I've been attending church regularly, praying that everything will work out for the best.

3. I have always given the Navy one hundred percent. I wish this was all a bad dream and never happened. I hope you can find it in your hearts to forgive me for betraying your trust and confidence in me. I understand I have done

wrong and it is your duty to impose punishment. I only hope the punishment could be less severe than a general court-martial. If I am convicted by a court-martial, which is inevitable after this admission of my guilt, I will get a criminal record and most likely the equivalency of a dishonorable discharge (dismissed from the naval service). These things will remain with me for the rest of my life and affect everything I try to do. There is even a distinct possibility that I will have to serve time in a federal penitentiary. This is an extremely high price to pay for one isolated instance of drug abuse. If there are any other avenues of punishment short of court-martial, I beg you to consider them. I am willing to submit my resignation if required.

Very respectfully,
GEORGE D. BARUNAS

I

This appeal requires us to review the military judge's and the Court of Military Review's application of Mil.R.Evid. 410. *Cf. United States v. Babat*, 18 M.J. 316, 325 (C.M.A.1984). This rule of evidence states in its entirety:

*Rule 410. Inadmissibility of Pleas, Plea Discussions, and Related Statements*

(a) *In general.* Except as otherwise provided in this rule, evidence of the following is not admissible in any court-martial proceeding against the accused who made the plea or was a participant in the plea discussions:

(1) a plea of guilty which was later withdrawn;

(2) a plea of nolo contendere;

(3) any statement made in the course of any judicial inquiry regarding either of the foregoing pleas; or

(4) any statement made in the course of plea discussions with the convening authority, staff judge advocate, trial counsel or other counsel for the Government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in a court-martial proceeding for perjury or false statement if the statement was made by the accused under oath, on the record and in the presence of counsel.

(b) *Definitions.* A "statement made in the course of plea discussions" includes a statement made by the accused solely for the purpose of requesting disposition under an authorized procedure for administrative action in lieu of trial by court-martial; "on the record" includes the written statement submitted by the accused in furtherance of such request.

The drafters of this rule indicated its purpose and scope as follows:

Rule 410 as modified effective 1 August 1981 is generally taken from the Federal Rule as modified on 1 December 1980. It extends to plea bargaining as well as to statements made during a providency inquiry, civilian or military. E.g., *United States v. Care*, 18 [U.S.] C.M.A. 535, 40 C.M.R. 247 (1969). Subsection (b) was added to the Rule in recognition of the unique possibility of administrative disposition, usually separation, in lieu of court-martial. Denominated differently within the various armed forces, this administrative procedure often requires a confession as a prerequisite. As modified, Rule 410 protects an individual against later use of a statement submitted in furtherance of such a request for administrative disposition. The definition of "on the record" was required because no "record" in the judicial sense exists insofar as request for administrative disposition is concerned. It is the belief of the Committee that a copy of the written statement of the accused in such a case is, however, the functional equivalent of such a record.

Although the expression "false statement" was retained in the Rule, it is the Committee's intent that it be construed

to include all related or similar military offenses.

The military judge concluded that prosecution exhibit 7 was not barred by the above rule. He stated:

Concerning the other motion contained in Defense Appellate Exhibit B, which is based on Rule 410 and pertains to Prosecution Exhibit 7 for identification, I find that Prosecution Exhibit 7 for identification is in the nature of a confession of guilt, an expression of remorse, and a plea for leniency. I believe the trial counsel's statement is correct that there is no appellate case law in the military on this issue and I have turned for guidance to the Federal appellate courts' interpretations of Federal Rule of Criminal Procedure 11 and Federal Rule of Evidence 410, and in the language of those cases I find that Prosecution Exhibit 7 for identification does not have the flavor of *quid pro quo* of bargaining between the accused and the government. The accused certainly indicated no subjective belief that this statement by him was a privileged plea negotiation, and also since it was a spontaneous and unsolicited confession of guilty to his Commanding Officer, there is no objective reason to believe that the statement would be held in confidence or would not be used as evidence against him. Accordingly, the motion contained in Defense Appellate Exhibit B is likewise denied.

The military judge was correct in his observation that appellant's letter contained no express offer to plead guilty in exchange for a government concession. *See United States v. Karr*, 742 F.2d 493, 496 (9th Cir.1984); *United States v. Cross*, 638 F.2d 1375, 1380 (5th Cir.1981). Moreover, he correctly noted that the command did not make any offer in the way of a bargain to appellant or his attorney to secure this confession. *See United States v. Levy*, 578 F.2d 896, 901 (2d Cir.1978). *Cf. United States v. Robertson*, 582 F.2d 1356, 1367 (en banc) (5th Cir.1978). A strong argument could be made that this letter would not be barred under Fed.R.Evid. 410.

*See Rachlin v. United States*, 723 F.2d 1373, 1377 n. 7 (8th Cir.1983); *United States v. Ceballos*, 706 F.2d 1198, 1203 (11th Cir.1983). *Cf. United States v. Robertson*, 582 F.2d at 1367; *United States v. Herman*, 544 F.2d 791 (5th Cir.1977). However, Mil.R.Evid. 410 is at issue in the present case, and the military judge's failure to distinguish the two rules caused error to occur at this court-martial.

▇ Mil.R.Evid. 410 is unquestionably an expanded version of Fed.R.Evid. 410. Its language and its analysis confirm its broad scope, particularly structured to include "a statement made by the accused solely for the purpose of requesting disposition under an authorized procedure for administrative action in lieu of trial by court-martial"; Mil.R.Evid. 410 (b). The rule clearly covers requests for disposition of charges outside formal plea negotiations, which apparently the federal rule does not. *See United States v. Grant*, 622 F.2d 308, 313 (8th Cir.1980).

▇ In this regard we observe that, prior to submission of this letter, charges had been preferred against appellant and an Article 32 investigation ordered. Moreover, he was assigned military counsel and consulted with this lawyer just before he sent this letter to his commanding officer. Also, immediately after submission of the letter, appellant's counsel contacted the command concerning this letter and administrative alternatives for disposition. The command did not reject these overtures outright but after some deliberation communicated its negative decision to appellant's lawyer. These additional facts establish that appellant's letter was an integral part of the administrative punishment or discharge process, albeit in its incipient stage. *See United States v. Levy*, 578 F.2d at 902.

▇ It is true that this letter "is in the nature of a confession of guilt, an expression of remorse, and a plea for leniency." However, we are not persuaded as a matter of law that this characterization is sufficient to obscure appellant's expressed

**76**

purpose of avoiding a general court-martial even at the price of his resignation. Moreover, we are not persuaded that appellant's possible failure to comply with all the requirements in submitting such a request to his commanding officer somehow places his statement outside the scope of Mil.R.Evid. 410. *See* BUPERSMAN § 3830320 (4) (1978). Such a holding would exalt form over substance and undermine the purpose of the rule.

## II

The general purpose of Mil.R.Evid. 410 and its federal civilian counterpart, Fed.R. Evid. 410, is to encourage the flow of information during the plea-bargaining process and the resolution of criminal charges without "full-scale" trials. *See United States v. Grant,* 622 F.2d at 313; *see generally Santobello v. New York,* 404 U.S. 257, 260–61, 92 S.Ct. 495, 497–98, 30 L.Ed.2d 427 (1971). An excessively formalistic or technical approach to this rule may undermine these policy concerns in the long run. *United States v. Herman,* 544 F.2d at 797. *See generally* Wright and Graham, *Federal Practice and Procedure: Evidence* § 5345 (1980). A failure to recognize and enforce the military expansion of this rule may have the same effect.

■■■ However, regardless of these substantial policy concerns, we are not free to reverse convictions solely on this basis. Art. 59(a); *see generally United States v Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). The erroneous admission of evidence in violation of this rule must have materially prejudiced an appellant. *See* Mil.R.Evid. 103(a). Here, the only evidence of appellant's guilt besides this letter of confession was the results of a urinalysis. *See United States v. Harper,* 22 M.J. 157 (C.M.A.1986). In this context, we have no doubt that he was prejudiced. *Cf. Milton v. Wainright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *United States v. Babat, supra.*

The decision of the United States Navy-Marine Corps Court of Military Review is reversed. The findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge EVERETT and Judge COX concur.