**UNITED STATES, Appellee,**

v.

**Specialist Robert C. WATKINS, Jr., 230–17–3554, United States Army, Appellant.**

**ACMR 8903792.**

U.S. Army Court of Military Review.

19 June 1991.

For Appellant: William J. Holmes (argued), Captain Jay S. Eiche, JAGC (on brief).

For Appellee: Major Thomas E. Booth, JAGC (argued), Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC (on brief).

Before De GIULIO, NAUGHTON and VARO, Appellate Military Judges.

## OPINION OF THE COURT

De GIULIO, Senior Judge:

Appellant was tried by a military judge sitting as a general court-martial at Stuttgart, Germany. Contrary to his pleas, he was found guilty of two specifications of larceny and two specifications of housebreaking in violation of Articles 121 and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 930 (1982). He was sentenced to a dishonorable discharge, confinement for seven years, total forfeitures, and reduction to the grade of Private E1. The convening authority approved the sentence.

Before this court, appellate defense counsel assigned the following errors:

### I

THE EVIDENCE OF RECORD IS NOT SUFFICIENT TO ESTABLISH APPELLANT'S GUILT TO THE CHARGED OFFENSES BEYOND A REASONABLE DOUBT EITHER FACTUALLY OR AS A MATTER OF LAW.

### II

THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY SUMMARILY REFUSING TO ORDER THE GOVERNMENT TO DISCLOSE THE IDENTITY OF A POTENTIAL WITNESS WHO COULD HAVE EXCULPATED APPELLANT OR AT LEAST IMPEACHED THE GOVERNMENT'S PRIMARY WITNESS.

### III

THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY ADMITTING EVIDENCE OF STATEMENTS MADE BY APPELLANT WHICH WERE INVOLUNTARY AS A MATTER OF LAW AND WHICH CONSTITUTED PRETRIAL NEGOTIATIONS.

### IV

THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY REFUSING TO SUPPRESS THE FRUITS OF AN ILLEGAL SEARCH OF THE ATTIC DIRECTLY ABOVE APPELLANT'S APARTMENT WHICH WAS NOT BASED ON PROBABLE CAUSE, CONSENT OR ANY OTHER RECOGNIZED AUTHORITY.

### V

THE SENTENCE ADJUDGED IS UNDULY SEVERE AND DISPROPORTIONATE TO THE OFFENSES COMMITTED AND THE CIRCUMSTANCES SURROUNDING THEM.

We disagree and affirm.

In a conversation with Private First Class (PFC) S, appellant, a military policeman, indicated that he knew of a way to get into the Outdoor Living Center, a local Army–Air Force Exchange System (AAFES) facility. Appellant further indicated that he had the patrol responsible for security checks. He asked PFC S if he wanted to get involved with appellant and Private A in taking things from the facility. PFC S refused. Subsequently, there was an unlawful entry into the Outdoor Living Center and various items of stereo equipment were stolen. After the "break in," upon inquiry by PFC S, appellant admitted that he had entered the facility. When asked what he had taken, appellant replied that "he just had enough."

Shortly thereafter, the Patch Barracks Officers' Club was unlawfully entered. Some hand-painted Russian boxes, cuckoo clocks and Gucci merchandise were stolen. Again, upon inquiry by PFC S, appellant stated that Private A "went in with him." Appellant related that he had obtained cuckoo clocks, Gucci wallets and belts. PFC S

also noted that appellant had a Gucci wallet in his possession.

Later, appellant was interviewed by a Criminal Investigation Command (CID) agent concerning the thefts. The Rights Warning Procedure Waiver Certificate, DA Form 3881, was used to advise appellant of his rights. On the form, appellant marked only the selection "I do not want to be questioned or say anything" and then signed the form. At this meeting, appellant did not request a lawyer. He refused to consent to a search of his quarters for the stolen property. Questioning ceased and appellant left. Later that evening, residents of appellant's apartment building found some of the property which had been stolen from the Officers' Club and the Outdoor Living Center mixed with some of appellant's clothes inside two clothes dryers which were located in a common laundry room. Subsequently, appellant's fingerprint was found on one of the items. Other stolen items were found in a wicker hamper in the apartment building attic above appellant's apartment. The wicker basket was partially opened so part of its contents were in plain view. The attic is an unfinished area that runs the entire length of the apartment building divided into approximately three rooms. It was accessible from a common stairwell. There were storage areas elsewhere in the building specified for each tenant. Anyone had access to the attic.

After finding the stolen property, the CID agent attempted to re-interview appellant outside his quarters. This time appellant initially requested counsel. At trial, the CID agent testified as follows:

I asked Specialist Watkins to step outside to talk to me. At that point I told Specialist Watkins that my intent was to re-interview him, if possible, since he did not want a lawyer at our first interview, but did not want to talk to me at the first interview. Specialist Watkins indicated that he had thought about it and wanted to seek counsel. Specialist Watkins, again, asked me—he had two questions to pose to me. I told him to go ahead. The first question was, 'Should he get a civilian lawyer, as opposed to a military lawyer?' I told him my personal opinion was that a military lawyer was credible and free and just as qualified as a civilian lawyer and a civilian lawyer he would have to pay for. The second question was, 'How much time would I get?' The answer to that was, again a personal opinion. I said 'Possible five years, I don't know. That is not up to me. It is up to the courts.' ... [appellant responded] 'I can't do the time.'

Later, appellant told PFC S that the CID didn't get everything. PFC P testified that appellant admitted that he had stolen some stereo equipment from the AAFES facility and clocks and Gucci merchandise from the Officers' Club.

Appellant contended that Privates First Class S and P were not believable and that appellant was on duty at the time of the offenses.

### Sufficiency of the Evidence

■ In the case before us, testing for legal sufficiency and considering the evidence in the light most favorable to the government, we find that a reasonable factfinder could have found beyond a reasonable doubt that appellant did, on the dates alleged, unlawfully enter the AAFES Outdoor Living Center (Specification 2, Charge I) and the Patch Barracks Officers' Club (Specification 3, Charge I) with intent to commit the criminal offense of larceny, therein, and that appellant did, on the dates alleged, steal the property as alleged (Specifications 2 and 3, Charge II). *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Considering the evidence, using the powers granted us by Article 66(c), Uniform Code of Military Justice, 10 U.S.C. § 866(c), we are convinced beyond a reasonable doubt of appellant's guilt of the offenses as alleged. *See United States v. Turner*, 25 M.J. 324 (C.M.A. 1987).

### Disclosure of the Identify of the Informant

At trial, appellant requested that the government disclose the identity of an informant who had allegedly identified PFC

P as the perpetrator of the offenses of which appellant was found guilty. The informant had been promised anonymity. At trial, appellant contended PFC P "may have made some prior inconsistent statement or there may be some other evidence disclosed after interviewing this individual which might impeach [P], who is a key witness in this case." The military judge denied appellant's motion stating that he had failed to show how the witness would be of help in his case.

■■■ The government has a privilege to refuse to disclose the identity of an informant. Manual for Courts–Martial, United States, 1984, Military Rule of Evidence 507(a) [hereinafter Mil.R.Evid.]. An exception to the privilege is made when the disclosure of the identity is necessary to the accused's defense on the issue of guilt or innocence. Whether necessity exists depends upon the circumstances of the case, considering the offense charged, the possible defense, the possible significance of the informant's testimony, and other relevant factors. Mil.R.Evid. 507(c)(2). Where disclosure of an informant's identity is relevant and helpful to the defense or essential to a fair trial, the government's privilege to withhold disclosure must give way. *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). The accused does not satisfy his burden to establish that the informant's identity is necessary to his defense by mere speculation. *United States v. Bennett*, 3 M.J. 903, 906 (A.C. M.R.1977), *pet. denied*, 4 M.J. 254 (C.M.A. 1978).

At trial, appellant's contention that PFC P *may* have made prior statements or that there *may* be some other evidence disclosed after interview is clearly speculation. Appellant did not meet his burden to overcome the government privilege to refuse disclosure. Further, sufficient evidence was before the court concerning PFC P's credibility so as to make such evidence,

if it did exist, cumulative. The assignment of error is without merit.

#### Admission of Appellant's Pre-trial Statement to the CID Agent

■■ Appellant contends that his statement to the CID agent that "I can't do the time" is inadmissable because it violates his right against self-incrimination and it was a statement made during plea negotiations. The evidence of record indicates that when the appellant was initially interviewed at the CID office, he indicated that he did not want to be questioned or say anything. When the CID agent again attempted to interview appellant at his apartment, he advised appellant of his rights and appellant requested counsel. Questioning ceased but appellant voluntarily asked the agent questions and his retorts to the agent's responses are the contested statements. Under the circumstances of this case, we believe the CID agent did not violate the requirement to scrupulously honor appellant's fifth amendment rights. *See Michigan v. Mosley*, 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975). Further, appellant did not request counsel at the first interview. When he did so at the second interview, questioning immediately ceased. Consequently, appellant's right to counsel was not violated. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The subsequent conversation initiated by appellant was properly admitted. *See Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983). Additionally, appellant's defense counsel conceded the issue at trial when he stated, "Based on testimony of Special Agent [V]. (sic) I would have to say that it appears that there was no rights warning violation, as to his recollection of the statement."

■■ Appellant further contends, however, that the statement is inadmissible because it was given in the course of plea negotiations. *See* Mil.R.Evid. 410(a)(4).[1]

---

1. Mil.R.Evid. 410(a)(4) provides, in pertinent part,

    [E]vidence of the following is not admissible in any court-martial proceeding against the accused who ... was a participant in the plea

discussions: ... any statement made in the course of plea discussions with the convening authority, staff judge advocate, trial counsel or other counsel for the Government which do not result in a plea of guilty....

An accused's statement is inadmissible when made solely for the purpose of requesting disposition under an authorized procedure for administrative action in lieu of trial by court-martial. Mil.R.Evid. 410(b). Thus, after charges were preferred, a letter to a commanding officer confessing guilt, expressing remorse, and begging consideration of other avenues short of court-martial was not admissible at trial. *United States v. Barunas,* 23 M.J. 71 (C.M.A.1986). Also, an oral statement made before charges were preferred to a commanding officer which constituted a request to the commander to resolve the matter in an administrative fashion is not admissible under Mil.R.Evid. 410. *United States v. Brabant,* 29 M.J. 259, 264 (C.M.A. 1989). These statements are viewed as being based upon a special subordinate-commander relationship and as such have been found to be part of a plea bargaining negotiation. *Id.* It is also error to admit evidence from a prosecution witness whose identity was disclosed in a conversation at a social function between the accused's civilian defense counsel and an assistant staff judge advocate. *United States v. Ankeny,* 30 M.J. 10, 15 (C.M.A.1990).

In the case *sub judice,* the CID agent was neither convening authority, staff judge advocate, assistant staff judge advocate, trial counsel, counsel for the government, nor appellant's commanding officer. *See* Mil.R.Evid. 410(a)(4); *Brabant,* 29 M.J. 259, *Barunas,* 23 M.J. 71. The statement was made to a CID agent who was performing his primary duty of investigating a crime and immediately after appellant was given his rights warning. We hold, therefore, that the statement made by appellant to the CID agent was not made during plea negotiations as described in Mil.R.Evid. 410 and was admissible at trial. To hold otherwise would create a rule that would jeopardize all statements made by an accused to criminal investigators, a result clearly not contemplated by the drafters of the Manual for Courts–Martial. Such a result would defy common sense.[2]

## Search of the Attic

■ Before us, appellant contends that the military judge erred by his refusal to suppress the fruits of the search of the attic directly above appellant's apartment because this search was not based on probable cause, consent, or any other recognized authority. The fourth amendment protects citizens from unreasonable intrusions into areas where they have a reasonable expectation of privacy. *See United States v. Olmstead,* 17 M.J. 247, 249 (C.M.A.1984) and cases cited therein. The question here is whether the person can claim a justifiable, reasonable, or legitimate expectation of privacy in the open attic of a government-owned apartment building. It has been held that a person has no expectation of privacy in an apartment building garage. *United States v. Penco,* 612 F.2d 19 (2d Cir.1979); *United States v. Cruz–Pagan,* 537 F.2d 554 (1st Cir.1976). It has also been held that an accused had no expectation of privacy in a latrine of a transient barracks to which there was unrestricted access by occupants, guests, and others. *United States v. Bailey,* 3 M.J. 799, 802 (A.C.M.R.), *petition denied,* 4 M.J. 149 (C.M.A.1977). *Cf. United States v. Battles,* 25 M.J. 58 (C.M.A.1987) (accused had no reasonable expectation of privacy in the common space of berthing area on a naval vessel).

The attic in question was accessible from a common stairwell. The attic had three entrances and the doors were not locked. Anyone with access to the stairwell could enter the attic. The attic ran the length of the building, was unfinished, but was divided by three walls. The attic did not serve as a storage area for the residents of the building, as such areas were provided in the basement. We find the appellant had no reasonable expectation of privacy in the attic. Some of the property in question was inside a wicker basket in the attic. The wicker basket was partially opened so part of its contents could be seen. Next to the wicker basket was property which fit

---

**2.** In addition to our legal conclusion regarding pretrial negotiations in general, we also have a significant question regarding whether the ap- pellant's retort "I can't do the time" is an admission against interest at all so as to even raise the negotiation issue asserted by the appellant.

the description of other items of the stolen property. We hold, therefore, that the military judge properly denied the motion to suppress the property seized in the common area, the attic, of the apartment building.

### Sentence Appropriateness

 Appellant's argument is that the sentence is unduly severe and disproportionate to the offense committed and the surrounding circumstances. We have examined the evidence presented, to include the evidence in extenuation and mitigation and the fact that appellant was a military policemen with over three years service who was found guilty of two specifications of housebreaking and two specifications of larceny of property of a value of over $8,000.00. Under the circumstances of this case, we find the sentence appropriate.

The allegations of error personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), are without merit.

The findings of guilty and the sentence are affirmed.

Judge NAUGHTON and Judge VARO * concur.

---

* Judge Gregory O. Varo took final action on this case prior to his reassignment.