# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, BROOKHART, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist ALADAR KHAN**
**United States Army, Appellant**

ARMY 20180160

Headquarters, 25th Infantry Division
Kenneth W. Shahan, Military Judge
Colonel Ian R. Iverson, Staff Judge Advocate

For Appellant: Captain Oluwaseye Awoniyi, JA; Stephen H. Carpenter, Jr., Esquire (on brief); Captain James J. Berreth, JA; Stephen H. Carpenter, Jr., Esquire (on reply brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Captain Lauryn D. Carr, JA (on brief).

29 August 2019

--------------------------------
SUMMARY DISPOSITION
--------------------------------

BROOKHART, Judge:

An enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification assault consummated by a battery upon a child under the age of 16 years and one specification of simple assault with an unloaded firearm, in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928 [UCMJ]. The panel sentenced appellant to be discharged from the service with a dishonorable discharge, to perform hard labor without confinement for ninety days, and to be reduced to the grade of E-1. The convening authority approved the portion of the adjudged sentence providing for the dishonorable discharge and reduction to E-1.

This case comes before us for review under Article 66, UCMJ. Appellant raises five assignments of error, only one of which merits discussion, but no relief.

## BACKGROUND

In April of 2017, the accused and his wife EK hosted a small barbecue at their home on Schofield Barracks in Hawaii. During the party, EK played a song on the stereo about adultery and publicly dedicated the song to appellant because she was concerned about his fidelity. As the party was breaking up, EK was outside speaking to Specialist [SPC] RB, a friend of appellant's. Appellant was inside, as were appellant's step-children, LL, who was six years old at the time, and his younger sister. Both children were in bed. At that time, EK heard something inside the house that caused her to shout an expletive and run inside. Specialist RB testified that he heard LL scream as EK was running into the house. Shortly thereafter, EK ran back out of the house past SPC RB and continuing toward the house next door. As she passed SPC RB, EK yelled that appellant was hurting LL. Specialist RB went into the house and located LL crying in his bedroom. Specialist RB asked LL if appellant had hit him, and LL indicated that he had. Specialist RB observed redness on LL's stomach. In the meantime, EK arrived at her neighbor's home and told her friend, KN, and her husband, Sergeant [SGT] JN, that appellant assaulted her by pressing a firearm into her collarbone and threatening to kill her. Early the next morning, EK made a more detailed statement to a Criminal Investigation Command (CID) agent. That statement was recorded and an agent took pictures of EK's injuries.

Sometime prior to trial, appellant submitted a request for discharge in lieu of court-martial pursuant to Army Reg. 635-200, Personnel Separations: Enlisted Personnel, ch. 10[1] (19 December 2016) [AR 635-200]. EK provided appellant's defense counsel with a letter in support of the request which stressed the financial difficulty she would face without appellant's support.[2] At trial, EK testified for the defense and denied ever being assaulted by appellant. On cross-examination, trial counsel engaged in the following exchange with EK:

> Q: At some point, when you found out about the charges in this case, you wrote a letter to the CG?
>
> A: Yes, for the Chapter 10 — is that correct?
>
> Q: By the CG, I meant the Commanding General of the 25th Infantry Division, right?

---

[1] Referred to herein as "Chapter 10."

[2] Sometime after the assault but before trial, EK learned that she was pregnant with twins.

A: Yes.

Q: That letter was a letter of support for your husband to ensure that the charges — or to ask for the charges to be dropped in this case, right?

A: Correct.

Trial counsel went on to cross-examine EK about her financial reliance on appellant, which was highlighted in the letter. Trial counsel also noted that, contrary to her testimony, the pretrial letter to the Commanding General contained no indication that the assault did not occur, implying that her testimony was a recent fabrication. No statements from appellant nor any other portion of the Chapter 10 request were mentioned. Similarly, neither EK's letter, nor any portion of the Chapter 10 request, were offered or admitted into evidence by the government. Defense counsel did not object to any of the questions related to the letter.

On redirect, trial defense counsel asked EK:

Q: The government made a big deal that you didn't mention this in the Chapter 10 memorandum — that it didn't happen. Did you tell anyone, at any point, that it didn't happen?

A: I told several people that it didn't happen.

Defense counsel did not further reference or seek to admit any other portion of appellant's Chapter 10 request. Later, after the members began deliberations, they returned to the courtroom to request additional evidence. First, the president of the panel requested to re-watch portions of EK's video recorded interview with law enforcement, which had been played during the merits portion of the trial. The president of the panel also requested to "review the letter that [EK] provided to the CG." However, because the letter had not been admitted on the merits, the trial judge ruled that the letter could not be provided to the panel. Both parties agreed with the ruling and at no time did defense counsel object to either questions or testimony about the letter, nor the references to its association with appellant's Chapter 10 request.

## LAW AND DISCUSSION

Appellant alleges he was deprived of a fair trial when the military judge allowed testimony related to his Chapter 10 request either because the evidence violated Military Rule of Evidence [Mil. R. Evid.] 410, or because the probative value of that evidence was outweighed by the danger of unfair prejudice. Mil. R. Evid. 403. According to appellant, an experienced panel would have known that such a request required appellant to acknowledge guilt, and by allowing the evidence he was deprived of a fair trial. At trial, appellant failed to object to the evidence; therefore, the issue is reviewed for plain error. Under a plain error analysis, relief is warranted only when: (1) there was an error; (2) the error was plain, clear, or obvious; and (3) the error resulted in material prejudice to a substantial right of appellant. *United States v. Nieto*, 66 M.J. 146, 149 (C.A.A.F. 2008).

Chapter 10 of Army Reg. 635-200 permits soldiers who have committed an offense under the UCMJ for which the punishment includes a bad-conduct or dishonorable discharge, to submit a request for an administrative discharge in lieu of trial by court-martial. AR 635-200, para. 10-1. The request must be approved by the general court-martial convening authority or an authorized delegate. *Id.* at para. 10-7. In the request, the applicant must acknowledge that he understands the elements of the offenses charged and is guilty of at least one charge or a lesser-included offense which authorizes a punitive discharge. *Id.* at para. 10-2. If granted, the discharge will typically be characterized as "general" or "other than honorable." *Id.* at para. 10-8. Statements by the soldier or the soldier's counsel made in connection with the request are not admissible against the soldier at a subsequent court-martial unless authorized under Mil. R. Evid. 410. *Id.* at para. 10-9.

Military Rule of Evidence 410 prohibits introduction of negotiations or other evidence related to guilty pleas which are withdrawn or otherwise fail. The rule is designed to encourage plea-bargaining and further the resolution of cases short of trial by ensuring that such negotiation cannot be later used against the accused. *United States v. Barunas*, 23 M.J. 71, 76 (C.M.A. 1986). Military Rule of Evidence 410 also bars admission of statements made by the accused solely for the purpose of requesting discharge in lieu of trial by court-martial. On its face, the rule does not prohibit the mere mention of an appellant's submission of a request for discharge in lieu of court-martial, nor admission of statements by third-parties accompanying such requests. Nonetheless, appellant contends that the military judge should have prohibited the evidence under Mil. R. Evid. 403.

While no appellate court has addressed the specific issue raised by appellant, our superior court has generally taken an expansive view of Mil. R. Evid. 410 in order to ensure it satisfies the policy concerns which led to its enactment. *United States v. Anderson*, 55 M.J. 182, 184 (C.A.A.F. 2001); *United States v. Vasquez*, 54

M.J. 303, 306 (C.A.A.F. 2001); *Barunas*, 23 M.J. at 75-76. Accordingly, at least with regard to mention of the Chapter 10, this court agrees that either under an expansive interpretation of Mil. R. Evid. 410, or under the Mil. R. Evid. 403 balancing test, that evidence should have been excluded in order to further the intent of the rule. However, that does not end our inquiry because in this case, appellant failed to object to either the mention of his Chapter 10 request or the cross-examination of EK on her letter in support of that request. As such, the challenged references to appellant's Chapter 10 request must be reviewed for plain error.

Here, we find that although there was error, it was neither plain nor obvious. The letter in question was not admitted into evidence, but rather only referenced by counsel on direct and cross-examination. During cross-examination, EK admitted that she was financially dependent on appellant and she conceded that she did not state in the letter that appellant had never assaulted her. However, on redirect, EK insisted that she had told others that appellant had not assaulted her and she testified repeatedly that the intent of her letter was to convince the Commanding General to withdraw the charges because there was no assault. During her testimony, the only mention of the term "Chapter 10" came once from EK herself and once from defense counsel. Later, when the president of appellant's panel requested the letter, he referred to it only as "the letter." Accordingly, it is not clear that the panel even understood the letter to be part of a request for discharge in lieu of court-martial that would have required some admission of guilt by the accused. Most importantly, despite the expansive interpretation of Mil. R. Evid. 410 discussed above, even if the link to the Chapter 10 process was clear to the panel, Mil. R. Evid. 410, on its face, would not have prevented reference to EK's letter on cross-examination because it did not include statements of the accused. Under these circumstances, we cannot say any alleged error was plain or obvious.

Finally, even if the purported error was plain and obvious, the references to EK's letter did not materially prejudice appellant's case. While EK testified at trial that appellant did not assault her, there was significant evidence to the contrary. Specialist RB testified that EK ran immediately to her neighbor's house shouting at him as she passed. Her neighbors testified that she appeared frantic and scared of appellant. She told both KN and SGT JN that appellant assaulted her with a firearm and described how it happened. In addition to her statements and the observations of witnesses, the panel received photographic evidence that EK had visible marks near her collarbone which were similar in size to the weapon later seized from appellant. Finally, although EK offered a different version of events at trial, her credibility was severely undercut by the prior inconsistent statements she made to CID and by her own obvious bias.

With regard to LL, SPC RB testified that he found LL crying in bed and observed a red mark on LL's stomach. LL told SPC RB that appellant had hit him in the stomach. Shortly thereafter, LL told a law enforcement officer and a paramedic

that appellant had assaulted him. LL was examined by a physician the next day who observed signs of injury in the area of his stomach. Only later, and while in the presence of his mother, did LL waiver on his story. He also made numerous statements to a forensic examiner that the panel could have considered as evidence that he was influenced to change his story. Accordingly, irrespective of any mention of appellant's Chapter 10 request, there was significant admissible evidence supporting the two assaults of which appellant was convicted.

## CONCLUSION

On consideration of the entire record, the findings and sentence are AFFIRMED.

Senior Judge MULLIGAN and Judge SCHASBERGER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court