UNITED STATES, Appellee,

v.

Robert C. WATKINS, Specialist,
U.S. Army, Appellant.

No. 66,967.

CM 8903792.

U.S. Court of Military Appeals.

Argued March 4, 1992.

Decided July 30, 1992.

For Appellant: *Captain Michael Huber*
(argued); *Lieutenant Colonel James H.
Weise* and *Captain Alan M. Boyd* (on
brief); *Colonel Robert B. Kirby.*

For Appellee: *Captain Jane F. Polcen*
(argued); *Colonel Dayton M. Cramer,
Lieutenant Colonel Daniel J. Dell'Orto,
Major Edith M. Rob* (on brief); *Major
Thomas E. Booth.*

*Opinion of the Court*

CRAWFORD, Judge:

Appellant was tried by a military judge
sitting as a general court-martial at Stutt-
gart, Germany. Contrary to his pleas, he
was found guilty of 2 specifications each of
larceny and of housebreaking, in violation

of Articles 121 and 130, Uniform Code of Military Justice, 10 USC §§ 921 and 930, respectively. He was sentenced to a dishonorable discharge, confinement for 7 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence. The Court of Military Review affirmed the findings and sentence. 32 MJ 1054 (1991). We affirm.

We granted appellant's petition for review to determine whether the military judge committed prejudicial error by admitting into evidence statements made by appellant which were involuntary as a matter of law and whether these statements constituted pretrial negotiations and thus were inadmissible under Mil.R.Evid. 410, Manual for Courts–Martial, United States, 1984.

## I

Appellant was interviewed by a Criminal Investigation Command (CID) agent concerning the thefts. After being advised of his rights, appellant invoked his right to remain silent. At this meeting appellant did not request a lawyer but refused to consent to a search of his quarters for the stolen property. The questioning ceased and appellant left the CID office.

Later that evening, residents of appellant's apartment building found in a common laundry room some of the stolen property among appellant's clothing which was in dryers. Subsequently, appellant's fingerprint was found on one of the items. Other stolen items were also found in a wicker hamper in the apartment building attic above appellant's apartment. The basket was open enough so that part of its contents were in plain view. The attic is an "unfinished" area that runs the entire length of the apartment building divided into approximately three rooms. It was accessible to a number of individuals from a common stairwell.

After finding the stolen property, the CID agent went to appellant's quarters. As to the circumstances surrounding any statements made at the quarters, the CID agent testified as follows:

I asked Specialist Watkins to step outside to talk to me. At that point I told Specialist Watkins that my intent was to re-interview him, if possible, since he did not want a lawyer at our first interview, but did not want to talk to me at the first interview. Specialist Watkins indicated that he had thought about it and wanted to seek counsel. Specialist Watkins, again, asked me—he had two questions to pose to me. I told him to go ahead. The first question was, "Should he get a civilian lawyer, as opposed to a military lawyer?" I told him my personal opinion was that a military lawyer was credible and free and just as qualified as a civilian lawyer and a civilian lawyer he would have to pay for. The second question was, "How much time would I get?" The answer to that was, again a personal opinion. I said, "Possible five years, I don't know. That is not up to me. It is up to the courts." ...

[Appellant responded,] "I can't do the time."

## II

■ Following the dictates of *Miranda v. Arizona*, 384 U.S. 436, 473–74, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966), the agent ceased the interrogation once the appellant invoked his right to remain silent. Once a suspect invokes his right to remain silent, there is no *per se* prohibition against reapproaching the suspect. Whether there is a violation of *Miranda* by approaching an individual after invoking his rights depends on which right was invoked, who initiates communication, the subject matter of the communication, when the communication takes place, where the communication takes place, and the time between invocation of the right and the second interview.

The seminal case in this area is *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). Mosley was arrested for several robberies. At the police station he was advised of his rights and declined to discuss the robberies. Two hours later a

different detective approached Mosley in his cell and again warned Mosley of his *Miranda* rights. After obtaining a waiver, he questioned the defendant about an unrelated murder. Whether this action was proper depended upon the interpretation of the following language in *Miranda v. Arizona, supra* 384 U.S. at 473–74, 86 S.Ct. at 1627:

> Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked.

The Court in *Mosley* rejected the "literal interpretations" of this language which "would lead to absurd and unintended results." *Michigan v. Mosley, supra* 423 U.S. at 102, 96 S.Ct. at 326. The Court held that the passage should not be interpreted as permitting a continuation of an interrogation after a momentary cessation. On the other hand it is not a blanket prohibition against further interrogation. The Court explained:

> The critical safeguard identified in the passage at issue is a person's "right to cut off questioning." Through the exercise of his option to terminate questioning he can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial setting. We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his "right to cut off questioning" was "scrupulously honored."

*Id.* at 103–04, 96 S.Ct. at 326 (citation and footnote omitted).

–A–

■ After appellant invoked his rights, the CID agent "scrupulously honored" the initial assertion of appellant's Fifth Amendment rights. The agent immediately ended the interview and permitted appellant to leave the CID office.

Even if his initial assertion of his rights were not honored, the next contact was more than 2 hours later.

> Law enforcement officials have been found to have scrupulously honored a suspect's right to terminate questioning in cases in which as little as one to two hours separated a suspect's invocation of her rights and one subsequent interrogation.

*Jacobs v. Singletary,* 952 F.2d 1282, 1293 (11th Cir.1992) (citations omitted). *See also United States v. House,* 939 F.2d 659, 662 (8th Cir.1991) (9–hour gap); *United States v. Hsu,* 852 F.2d 407, 410 (9th Cir.1988) (30–minute gap).

–B–

■ The next question in this case is whether the mere asking for a reinterview of an individual not in custody was an interrogation, that is, questioning designed "to elicit an incriminating" statement. *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980). The answer is no. Even as to the right to counsel, Justice Powell, concurring in the result in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), indicated that

> police legitimately may inquire whether a suspect has changed his mind about speaking to them.... It is not unusual for a person in custody who previously has expressed an unwillingness to talk or a desire to have a lawyer, to change his mind and even welcome an opportunity to talk. Nothing in the Constitution erects obstacles that preclude police from

ascertaining whether a suspect has reconsidered his original decision.

*Id.* at 490, 101 S.Ct. at 1888* (citations omitted). And as noted by Justice White in his separate opinion in *Mosley,* an individual who has indicated his desire not to be questioned "might wish to know—if it were true—that (1) the case against him was unusually strong and that (2) his immediate cooperation with the authorities in the apprehension and conviction of others or in the recovery of property would redound to his benefit in the form of a reduced charge." 423 U.S. at 109 n. 1, 96 S.Ct. at 329.

■ This case only involves exercise of the right to remain silent. After obtaining additional evidence, the CID agent sought to reinterview appellant within 2 1/2 hours of the initial interview. He did not interrogate appellant but reminded him of his earlier rights warning. Also, this exchange took place at appellant's quarters and not in the coercive environment arising from being in custody at the police station or CID office. When appellant requested counsel, the CID agent stopped the questioning. Appellant, however, initiated the subsequent exchange by asking the agent whether he preferred military or civilian counsel and how much punishment appellant was facing. Appellant's statements during that ensuing conversation were properly admitted in evidence as they were not in response to an interrogation.

### III

■ Appellant also contends that the statements to the CID agent were inadmissible because of a violation of Mil.R.Evid. 410(a)(4). That rule provides that "statement[s] made" during plea negotiations "with the convening authority, staff judge advocate, trial counsel or other counsel for the Government" are inadmissible at trial. This rule was modeled after the 1980 amendment to Fed.R.Evid. 410(4), which provides that "statement[s] made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty" were inadmissible. These changes were made to draw a distinction between statements made to law enforcement officials and to authorities that have the power to enter into plea negotiations. Fed.R.Crim. P. 11(e)(6), Advisory Committee Note to 1979 Amendment, effective December 1980. Both the 1980 amendment to Fed.R.Evid. 410(4) and Mil.R.Evid. 410(a)(4) established a *per se* rule of inadmissibility when discussions are with the enumerated individuals. *Id.* This does not mean that statements to law enforcement agents are inevitably admissible but only means that if promises or inducements are made, these issues would be decided under the voluntariness standard and not under Mil.R.Evid. 410(a). Mil. R.Evid. 410(b) further provides:

> (b) *Definitions.* A "statement made in the course of plea discussions" includes a statement made by the accused solely for the purpose of requesting disposition under an authorized procedure for administrative action in lieu of trial by court-martial; "on the record" includes the written statement submitted by the accused in furtherance of such request.

This has no counterpart in the federal rule. Mil.R.Evid. 410(b) would prevent admission of discussions with a commander to resolve the matter administratively. *United States v. Brabant,* 29 MJ 259 (CMA 1989). Mil.R.Evid. 410 also precludes admissibility of handwritten letters to the suspect's commander, a special court-martial convening

---

* *Compare Minnick v. Mississippi,* 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), *with* the following statement from *McNeil v. Wisconsin,* —— U.S. ——, 111 S.Ct. 2204, 2208, 115 L.Ed.2d 158 (1991):

> If the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumably involuntary

and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards. Query whether *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), and *Minnick* apply in the absence of custody.

authority. *United States v. Barunas*, 23 MJ 71 (CMA 1986).

When appellant made his statements, the CID agent was not acting on behalf of the staff judge advocate, the convening authority, or appellant's commander. The agent also did not have the authority to enter into plea negotiations with appellant. Because the agent was not any of the enumerated individuals, he was not within the plain language of Mil.R.Evid. 410(a)(4). Thus, Mil.R.Evid. 410 would not apply to the CID agent's conversation with appellant. Since the statement to the agent was clearly voluntary, there is no barrier to its admission.

The decision of the United States Army Court of Military Review is affirmed.

Judge COX concurs.

WISS, Judge, joined by SULLIVAN, Chief Judge, and GIERKE, Judge (concurring in part and in the result):

As the majority acknowledges, "This case only involves exercise of the right to remain silent." 34 MJ at 347. I agree fully with the majority opinion that analyzes that right in the context of the circumstances of this case. Accordingly, since the right to counsel is not in issue here, I do not associate myself with the language in Section IIB of the majority opinion that discusses that right or with the footnote that ends that discussion. The majority correctly cites *Michigan v. Mosley*, 423 U.S. 96, 109 n. 1, 96 S.Ct. 321, 329 n. 1, 46 L.Ed.2d 313 (1975), as dispositive of the point analyzed in that section of the opinion.