# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WALKER, HAYES, and MORRIS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant DANIEL D. HERMAN**
**United States Army, Appellant**

ARMY 20220248

Headquarters, III Corps and Fort Cavazos
Scott Z. Hughes, Military Judge
Colonel Runo C. Richardson, Staff Judge Advocate

For Appellant: Major Mitchell D. Herniak, JA (argued);[1] Jonathan F. Potter, Esquire; Major Mitchell D. Herniak, JA (on brief and reply brief).

For Appellee: Captain Stewart A. Miller, JA (argued); Colonel Christopher B. Burgess, JA; Major Chase C. Cleveland, JA; Captain Stewart A. Miller, JA (on brief).

15 December 2023

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

HAYES, Judge:

Appellant asserts two errors before this Court, both of which merit discussion and one of which merits relief.[2] The government concedes the military judge applied the incorrect maximum punishment and we take action to correct that error in our decretal paragraph. However, as discussed below, we find the military judge did not

---

[1] The court heard oral argument on 7 November 2023 at Syracuse University College of Law as part of the court's outreach program.

[2] We have given full and fair consideration to the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they merit neither discussion nor relief.

abuse his discretion when he denied a defense motion to suppress appellant's statements and derivative evidence and that any errors made in arriving at his ruling were harmless.

## BACKGROUND

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of six specifications of wrongful broadcast of intimate visual images and one specification of false official statement in violation of Articles 117a and 107, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 917a and 907. The same day, the military judge sentenced appellant to a bad-conduct discharge, a total of thirteen months of confinement,[3] and reduction to the grade of E-1.

This case involved the sending of intimate images through digital communications. Ms. ███ was a 19-year-old junior soldier, previously in a romantic relationship with the then 31-year-old appellant, and when she ended the relationship upon his assignment to Kuwait, appellant broadcast intimate images of her over social media. Ms. ███ reported the offense to her local United States Army Criminal Investigation Command (CID) office.

On 29 May 2020, CID interviewed appellant in Kuwait. The interview and appellant's time in CID custody lasted just over fourteen hours. At the outset, Special Agent (SA) ███ advised appellant of his rights under Article 31(b), UCMJ, and Appellant waived his Article 31(b) rights in writing. Appellant was cooperative with CID for the vast majority of his time in custody. Appellant provided consent to search three digital devices: (1) an iPhone 7 Plus; (2) a Samsung tablet; and (3) a Dell Inspiron computer. However, appellant denied owning a second cell phone.

Over eight hours into the interview, appellant was being interviewed by a second CID agent, SA ███, when a third CID agent, SA ███ entered the room. For approximately twenty-one minutes, SA ███ interrogated appellant. About four minutes into SA ███'s interrogation, in response to SA ███ challenging appellant's assertion that he had been truthful about his ownership of an iPad, appellant made two statements, "Imma have to [invoke]/[evoke][4] on this one" and "[w]hen this is over Imma have to pay somebody because this right here, no, this is definitely not fair." Without any acknowledgment of either statement, SA ███ moved on from the iPad discussion to a general discussion about appellant's apparent culpability. She

---

[3] Appellant was sentenced to thirteen months for each specification, and all sentences to confinement ran concurrently.

[4] While it is difficult to ascertain if appellant said "evoke" or "invoke," we are satisfied that what he meant was "invoke" and will treat the statement accordingly.

continued to question appellant for another seventeen minutes. Appellant was subsequently questioned off and on by multiple agents for almost six more hours.

After appellant's alleged invocation, upon being informed CID had seized a second phone from appellant's quarters and would be searching the second phone, appellant said, "you can search it." When he was asked to provide the passcode for the phone, he provided the passcode. After receiving appellant's passcode, CID searched appellant's phone. The search produced several images that formed the basis for additional charges and specifications.

At trial, the defense filed a timely motion to suppress appellant's post-invocation statements and evidence derived from those statements. In a written ruling, the military judge denied the motion. Addressing appellant's invocation, the military judge found appellant's statements to SA ▇ were equivocal and ambiguous. In arriving at this conclusion, the military judge "considered the Accused's actions and statements to CID throughout the course of the entire interrogation."

On the dates appellant committed the offenses under Article 117a, UCMJ, between 21 March 2020 and 24 May 2020, there was no enumerated maximum punishment for Article 117a. The Executive Order establishing the maximum punishment for a violation of Article 117a, UCMJ as a dishonorable discharge, confinement for two years, and forfeiture of all pay and allowances, did not come into effect until 26 January 2022. Exec. Order No. 14,062, 87 Fed. Reg. 4763 (Jan. 26, 2022). Trial defense counsel argued the maximum confinement for each specification should be that for a general disorder: four months confinement and forfeiture of two-thirds pay per month for four months.

## LAW AND DISCUSSION

*Motion to Suppress*

Appellant has challenged the military judge's ruling denying the motion to suppress all statements made after the alleged invocation of his Fifth Amendment rights and all derivative evidence therefrom. Appellant argues the alleged invocation was unequivocal and all subsequent statements were secured in violation of his Fifth Amendment rights and were therefore involuntary.

A military judge's ruling on a motion to suppress is reviewed for an abuse of discretion, and the evidence is considered in the light most favorable to the party that prevailed at trial. *United States v. Mitchell*, 76 M.J. 413, 417 (C.A.A.F. 2017). However, "'[t]he military judge's determination that a confession is voluntary is a question of law, requiring independent, *i.e.*, *de novo*, review.'" *United States v. Burnside*, 74 M.J. 783, 789 (Army Ct. Crim. App. 2015) (citing *United States v. Ford*, 51 M.J. 445, 451 (C.A.A.F. 1999)).

3

The Self-Incrimination Clause of the Fifth Amendment reads, "No person. . . shall be compelled in any criminal case to be a witness against himself. . . ." U.S. CONST. amend. V, cl. 3. A communication is entitled to the privilege where it is "testimonial, incriminating, and compelled." *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 189 (2004). An accused's communication is testimonial when it "explicitly or implicitly, relate[s] a factual assertion or disclose[s] information." *Doe v. United States*, 487 U.S. 201, 210 (1988).

When an individual is in custody and subject to interrogation, the individual must be advised he has the right to remain silent and he has the right to have an attorney present during questioning. *Miranda v. Arizona*, 384 U.S. 436, 467-71 (1966). During questioning by law enforcement, "if the individual 'indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.'" *United States v. Traum*, 60 M.J. 226, 230 (C.A.A.F. 2004) (quoting *Miranda*, 384 U.S. at 473); *see also United States v. Pruett*, ARMY 20180368, 2019 CCA LEXIS 468, at *3 (Army Ct. Crim. App. 25 Nov. 2019) (summ. disp.). If an accused exercises his right to "cut off questioning," that right must be "scrupulously honored." *Michigan v. Mosley*, 423 U.S. 96, 104 (1975). To invoke the right to remain silent, "no particular words or actions are required," however, "[the] invocation must be unequivocal before all questioning must stop." *Traum*, 60 M.J. at 230 (citing *United States v. Sager*, 36 M.J 137, 145 (C.M.A. 1992)). A partial invocation as to a particular question or subject area has been held to be equivocal and does not foreclose questioning on other topics. *Id.*

An unequivocal or unambiguous invocation requires immediate cessation of questioning under Military Rule of Evidence [Mil. R. Evid.] 305(c)(4). This court has previously found "[t]he term 'equivocal' means 'having different significations equally appropriate or plausible; capable of double interpretation; ambiguous.'" *United States v. Rittenhouse*, 62 M.J. 509, 511 (Army Ct. Crim. App. 2005) (quoting *Coleman v. Singletary*, 30 F.3d 1420, 1425 (11th Cir. 1994)). Whether an accused has invoked his or her right to remain silent is an "objective inquiry." *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010). The appropriate analysis is whether an invocation is "'sufficiently clear[] that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney' or to remain silent." *United States v. Delarosa*, 67 M.J. 318, 324 (C.A.A.F. 2009) (quoting *Davis v. United States*, 512 U.S. 452, 459 (1994).

In evaluating ambiguity, "[c]ourts may consider the circumstances 'preceding, as well as concurrent with, the invocation in the course of addressing the issue of ambiguity.'" *Pruett*, 2019 CCA LEXIS 468, at *4 (quoting *Delarosa*, 67 M.J. at 324). However, in evaluating ambiguity, courts may not consider subsequent responses. *Smith v. Illinois*, 469 U.S. 91, 98-99 (1984) (in holding a court may not consider subsequent statements to determine a valid waiver of the right to counsel, the Court stated, "[u]sing an accused's subsequent responses to cast doubt on the

adequacy of the initial request *itself* is even more intolerable.") (emphasis in original).

Pursuant to Mil. R. Evid. 304(a), "[i]f the accused makes a timely motion or objection under this rule, an involuntary statement from the accused, or any evidence derived therefrom, is inadmissible at trial except as provided in subdivision (e)." Military Rule of Evidence 304(a)(1)(A) defines "involuntary statement" as "a statement obtained in violation of the self-incrimination privilege or Due Process Clause of the Fifth Amendment to the United States Constitution, Article 31, or through the use of coercion, unlawful influence, or unlawful inducement." "'[A]n individual may claim the most favorable privilege provided the Fifth Amendment to the United States Constitution, Article 31, *or these rules.*'" *Mitchell*, 76 M.J. at 419 (emphasis in original) (quoting Mil. R. Evid. 301(a)).

In the instant case, appellant was in a custodial interrogation. However, he was provided his Article 31(b) rights and executed a valid waiver. Appellant concedes his statement was voluntary up until the point he allegedly invoked his right to remain silent. Appellant argues his invocation was unambiguous and unequivocal, requiring law enforcement to scrupulously honor the invocation and cease all questioning. Appellee argues appellant's invocation attempt was ambiguous and equivocal, and that CID was not required to clarify it.

Conducting our objective inquiry, we find it is not sufficiently clear that a reasonable police officer in these circumstances would understand appellant's statement to be a request for an attorney or to remain silent. At best, appellant appears to invoke his right to remain silent when challenged about whether he had been truthful about his ownership of an iPad when he said "Imma have to 'invoke' *on this one*" (emphasis added) followed immediately by "*When this is over* Imma have to pay somebody because this right here, no, this is definitely not fair." (emphasis added). The interviewer then proceeded to a different line of questioning. To the extent appellant's first statement was an invocation of his right to remain silent, it was apparently a limited invocation as to that particular subject area, and SA ▓ honored that limited invocation by moving on from the iPad discussion. At the very least, it was ambiguous. As appellant concedes his second statement was at best an indication of a future intent to retain an attorney after the interview was complete, it also did not require a cessation of questioning. Appellant's subsequent statements therefore continued to be voluntary.

This finding of voluntariness is readily ascertained from the circumstances preceding, and concurrent with, the alleged invocation. As such, the military judge did not abuse his discretion in denying the motion to suppress the statements made after the alleged invocation. To the extent the military judge relied on any information subsequent to the alleged invocation in making his ruling, our de novo review of the voluntariness of the statement renders the error harmless.

As the continued questioning was authorized, we need not reach the lawfulness of the consent to search the second phone, the request for the passcode, or the inevitable discovery of the contents of the phone absent the request for the passcode. The consent, the passcode, and the contents of the phone were all lawfully obtained as a result of appellant's voluntary statements.

*Maximum Punishment*

The consideration of the maximum punishment authorized for an offense is a question of law reviewed de novo. *United States v. Beaty*, 70 M.J. 39, 41 (C.A.A.F. 2011). Although courts review a "military judge's sentencing determination under an abuse of discretion standard . . . where a military judge's decision was influenced by an erroneous view of the law, that decision constitutes an abuse of discretion." *Id.*

"'The Constitution forbids the passage of ex post facto laws, a category that includes [e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, *when committed.*'" *United States v. Busch*, 75 M.J. 87, 88 (C.A.A.F. 2016) (quoting *Peugh v. United States*, 569 U.S. 530, 532 (2013)) (emphasis added).

Rule for Courts-Martial 1003(c)(1)(B) addresses the maximum punishment for offenses not listed in Part IV of the Manual for Courts-Martial. The first part of that rule calls for determining whether the offense not listed is "included in or closely related to" a listed offense. R.C.M. 1003(c)(1)(B)(i). The second part of the rule states, "[a]n offense not listed in Part IV and not included in or closely related to any offense listed therein is punishable as authorized by the United States Code, or as authorized by custom of the service." R.C.M. 1003(c)(1)(B)(ii).

In looking at the definition of "custom of the service," our superior court has stated, "we find that the 'custom of the service,' as used in R.C.M. 1003(c)(1)(B)(ii), simply means the penalty authorized for those offenses which have traditionally been used in the military justice system to charge service members under the same or similar factual circumstances." *Busch*, 75 M.J. at 93.

In addressing Article 134, UCMJ, offenses that do not fall into any category of R.C.M. 1003(c)(1)(B), our superior court has set the maximum punishment at four months confinement and forfeiture of two-thirds pay per month for four months. *Beaty*, 70 M.J. at 45; *See also United States v. Holdman*, ARMY 20190040, 2020 CCA LEXIS 102, *8-9 (Army Ct. Crim. App. 31 Mar. 2020) (mem. op.) (reducing appellant's calculated maximum confinement by four months after finding a novel Article 134 offense that used almost identical elements to Article 117a was factually insufficient).

The offense of wrongful broadcast or distribution of intimate visual images was enacted in the National Defense Authorization Act for Fiscal Year 2018. Pub. L. No. 115-91, §533, 131 Stat. 1389-90 (2017). The President did not promulgate a maximum punishment until 26 January 2022. Exec. Order No. 14,062, 87 Fed. Reg. 4763 (Jan. 26, 2022)

Here, appellant's sentence for the Article 117a offenses violates the ex post facto clause because application of Exec. Order 14,062 inflicted a greater punishment on appellant than the law annexed to the crime when committed. *Busch*, 75 M.J. at 88. At the time of the alleged offenses, a period spanning 21 March 2020 to 24 May 2020, an enumerated maximum punishment for Article 117a did not exist. The offense under Article 117a is neither included nor closely related to any other UCMJ offense under R.C.M. 1003(c)(1)(B)(i). Furthermore, under R.C.M. 1003(c)(1)(B)(ii), there is no analogous federal offense, nor an offense that has traditionally been used to charge servicemembers under the same or factually similar circumstances. Consequently, the appropriate maximum punishment was a sentence of four months confinement and forfeiture of two-thirds pay per month for four months. *Beaty*, 70 M.J. at 40.

## CONCLUSION

On consideration of the entire record the findings of guilty are AFFIRMED. The thirteen-month sentence to confinement for the Article 107 violation is AFFIRMED. Upon reassessment of the remainder of the sentence due to the erroneous calculation of the maximum punishment for the Article 117a offenses, we are confident the military judge would have sentenced appellant to four months confinement for each Article 117a specification, to run concurrently.[5] We are also confident the military judge would still have imposed a reduction to the grade of E-1 and bad-conduct discharge.[6]

---

[5] We assess the impacted specifications in accordance with the principles articulated by our superior court in *United States v. Sales*, 22 M.J. 305, 307-08 (C.M.A. 1986) and *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013). Based on our experience as judges on this court, we are familiar with the relatively new but frequently charged Article 117a offense such that we may reliably determine what sentence appellant would have received in light of the four-month maximum period of confinement for a general disorder.

[6] As the military judge ordered the sentences to confinement for each Article 117a violation to run concurrently to the thirteen-month sentence to confinement for the Article 107 violation, and because we have reassessed the remainder of the sentence and found the reduction and discharge appropriate, the error in calculating the maximum punishment did not prejudice the appellant – his sentence to confinement remains thirteen months.

Senior Judge WALKER and Judge MORRIS concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court